**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**PENSACOLA DIVISION**

**CHRISTOS RALLIS,**

**Plaintiff,**

**vs.**                                                        **Case No. 3:08cv102/MCR**

**FIRST GULF BANK, N. A.,**

**Defendant.**

_____/

## O R D E R

Plaintiff Christos Rallis ("Rallis") sues Defendant First Gulf Bank, N. A. ("First Gulf" or "the Bank") alleging violations of the Electronic Funds Transfer Act ("EFTA"), 15 U.S.C. § 1693, et seq., and breach of contract.[1]  Pending before the court is First Gulf's motion to dismiss Rallis' complaint pursuant to Fed.R.Civ.P. 12(b)(6), to which Rallis has responded.[2]    For the reasons stated below the court GRANTS First Gulf's motion. Dismissal is without prejudice to Rallis' filing an amended complaint

**Background**

According to the allegations of the complaint, Rallis opened a personal checking account at First Gulf some time prior to January 2006.  Rallis alleges that under the terms

---

[1]  Rallis initiated this case in state court.  First Gulf removed the matter to this forum on March 11, 2008, asserting removability based on federal question jurisdiction pursuant to 28 U.S.C. § 1331 for the EFTA claims and supplemental jurisdiction pursuant to 28 U.S.C. § 1367 for the state law claim.  Plaintiff has not moved for remand. The court is satisfied that removal is proper and that jurisdiction lies.

[2]  Plaintiff's complaint and attachments may be found at Docket Entry #1-2, pp. 5-18 of the removal papers. See also motion to dismiss at doc. 6 and memorandum in support at doc. 7; response in opposition at doc. 8.

of the account agreement he is not liable for unauthorized transactions using his First Gulf Bank Visa checkcard for certain point-of-sale activities.  Rallis asserts that because he frequently travels internationally he inquired whether First Gulf had the ability to monitor his account for suspicious and/or fraudulent activities while he was abroad.  He also arranged a meeting with First Gulf to make special security arrangements for handling transfers of his money during his travels. According to Rallis, First Gulf assured him that it possessed the technological expertise necessary to monitor his account for suspicious and/or fraudulent activities; additionally, Rallis maintains that he was told the Bank would alert him to any problems and place a hold on the account if it detected such activities.

Rallis alleges that on December 22, 2006, he became aware—without being informed by First Gulf—that some fraudulent transfers and purchases had been made through his First Gulf Visa checkcard while he was out of the country. According to Rallis, none of the transactions was made using an automatic teller machine ("ATM") or his personal identification number ("PIN"); rather, most of the transactions were point-of-sale transactions approved and authorized by First Gulf.   Rallis immediately gave verbal and written notice to First Gulf of the fraudulent transactions, and he also completed an "EFT Error Resolution Worksheet" in which he reported a loss of $6,624 to the Bank.  Rallis states that he later determined the total amount of fraudulent transactions  to be over $13,000.  Rallis also advised the Bank that due to a pending real estate purchase he urgently needed provisional credit for his account to cover the fraudulent activities.   First Gulf denied Rallis' request, however, which Rallis asserts caused him to be unable to complete the pending real estate deal.  On January 4, 2007, First Gulf notified Rallis that it was denying his entire claim for reimbursement for the fraudulent transfers, although approximately five months later First Gulf partially reimbursed him for the loss.  Rallis contends, however, that over $8,600 in unauthorized transactions remains unreimbursed.

On December 28, 2007, Rallis filed in state court a three-count complaint, to which he attached as exhibits excerpts of the account agreement, the EFT Error Resolution Worksheet, and First Gulf's denial letter.[3]  Count I is a state law claim for breach of the

---

[3]  In addressing First Gulf's motion to dismiss, the court may—and does here—consider the exhibits attached to Rallis' complaint.  See Thaeter v. Palm Beach County Sheriff's Office, 449 F.3d 1342, 1352 (11th Cir. 2006) (stating that on motion to dismiss court must limit its consideration to the pleadings and attached exhibits); Brooks v. Blue Cross & Blue Shield, Inc., 116 F.3d 1364, 1369 (11th Cir. 1997) (stating that "where

parties' account agreement, and Counts II and III are brought pursuant to provisions of the EFTA.   As First Gulf has now moved to dismiss each of the claims and Rallis has responded in opposition, this matter is ripe for review.

**Standard of Review**

In deciding a motion to dismiss for failure to state a claim under Fed.R.Civ.P. 12(b)(6), the court should construe the pleadings broadly, accept the material allegations of the complaint as true, and draw all reasonable inferences in the plaintiff's favor.  See Sheuer v. Rhodes, 416 U.S. 232, 236 (1974), abrogated on other grounds, Harlow v. Fitzgerald, 457 U.S. 800, 815 (1982); Watts v. Florida Intern. University, 495 F.3d 1289, 1295 (11th Cir. 2007).  To satisfy the pleading requirements of Fed.R.Civ.P. 8, a complaint must simply give the defendant fair notice of the plaintiff's claims and the grounds upon which they rest.  See Swierkiewicz v. Sorema, N.A., 534 U.S. 506, 512, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002);  Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); Erickson v. Pardus, ___ U.S. ____, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007) (per curiam).  The court must determine only whether "the claimant is entitled to offer evidence to support the claims," not whether the plaintiff can ultimately prove the facts alleged.  See Swierkiewicz, 534 U.S. at 511 (quoting Scheuer, 416 U.S. at 236);  United States v. Baxter Int'l, Inc., 345 F.3d 866, 881 (11th Cir. 2003). Although "a formulaic recitation of the elements of a cause of action will not do," Bell Atlantic Corp. v. Twombly, ___ U.S. ____, 127 S.Ct. 1955, 1965, 167 L.Ed.2d 929 (2007), the allegations are sufficient if they "raise a right to relief above the speculative level." Id.  In other words, the complaint must include "enough facts to state a claim to relief that is plausible on its face." Id. at 1964-65. Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Twombly, 127 S.Ct. at 1969.  There is no "probability requirement at the pleading stage"; rather, the standard "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of" the necessary element. Id. at 1965. It is sufficient if the complaint succeeds in "identifying facts

---

the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the Court may consider the documents part of the pleading for purposes of Rule 12(b)(6) dismissal, and the defendant's attaching such documents to the motion to dismiss will not require conversion of the motion into a motion for summary judgment."). See also Fed.R.Civ.P. 10(c) (stating that "[a] copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes.").

that are suggestive enough to render [the element] plausible." Id.

**Discussion**

     Counts II and III:  Violations of the Electronic Funds Transfer Act

     Congress enacted the EFTA with the purpose of providing "a basic framework establishing the rights, liabilities, and responsibilities of participants in electronic fund transfer systems." 15 U.S.C. § 1693(b). The EFTA's "primary objective . . . is the provision of individual consumer rights" with respect to electronic fund transfers; the statute seeks to promote this objective through regulating disclosures, preventing fraud, and allocating liability. Id.; see also, e.g., 15 U.S.C. § 1693c (requiring disclosure of terms and conditions of electronic transfers); § 1693d (requiring documentation of transfers); § 1693e (requiring a writing for preauthorized electronic fund transfers); § 1693f (establishing procedures for error resolution); § 1693g (assigning and limiting the liability of consumers); § 1693h (assigning and limiting the liability of financial institutions); § 1693i (establishing requirements for issuance of cards); § 1693j (suspending consumer obligations in instances of system malfunction); § 1693k (restricting compulsory use of electronic funds transfers); and § 1693m (providing civil liability for the violation of any subsection of § 1693).

     According to Rallis, Counts II and III of his complaint arise under 15 U.S.C. §§ 1693m and 1693f, respectively.  Rallis alleges that despite being put on notice of the fraudulent transfers and the harm those transfers were causing him, First Gulf failed to investigate and report its findings to him as required under the EFTA or to fully credit his account. Moreover, Rallis asserts, as of the date of the complaint First Gulf still has neither provided him with a proper report nor fully credited his account.  Rallis contends that as a result of being denied access to his funds he has suffered damages that could not be mitigated.  As relief, he seeks all damages and relief provided for violation of the EFTA (including treble damages as to Count III), plus interest, attorneys' fees, and costs.

     First Gulf moves for dismissal of the complaint on the ground Rallis has merely presented conclusory allegations that do not satisfy the pleading requirements of Fed.R.Civ.P 8(a) and Twombly.  More specifically, First Gulf argues that Counts II and III should be dismissed because Rallis has failed to identify the particular transactions he claims were unauthorized or to provide the dates of such transactions, and thus he has

failed to set forth with adequate specificity the basic facts supporting his claims. Furthermore, First Gulf submits, even if the court finds Rallis' allegations sufficiently specific in this regard, Rallis nevertheless has failed to plead that he timely notified the Bank of the fraudulent activities, a failure that is fatal to Rallis' claims because timely notification is an essential element of an EFTA violation.  According to First Gulf, 15 U.S.C. § 1693f(a) requires that notice of alleged errors must be given to the financial institution within sixty days after it has transmitted documentation of transfers—in this case, Rallis' monthly statement—but Rallis did not inform First Gulf of any problems until December 22, 2006, approximately six months after the fraudulent transactions evidently began occurring in June 2006.[4]

Rallis responds that the complaint and attachments are adequate to identify the fraudulent transactions at issue in this case.[5]  As to Counts II and III, Rallis further argues that timely notice is not an element of his causes of action under 15 U.S.C. §§ 1693f and 1693m, pointing to provisions of § 1693g to support his position.  Rallis submits that pursuant to § 1693g(b) the burden of proof is on the financial institution to establish a customer's liability for unauthorized electronic fund transfers, not the customer. Additionally, Rallis apparently contends that §1693g(a)'s "extenuating circumstances" exception to the notice time requirements in § 1693f applies because he notified the Bank that he often travels outside the United States and advised it of his need for special security arrangements due to his extensive trips.[6]  Rallis also asserts that § 1693g(d),

---

[4]  In an effort to identify the dates of the transfers Rallis alleges were fraudulent, First Gulf points to Exhibit C of the complaint, the January 4, 2007, denial of claim letter in which its representative in part states: "After reviewing your claim disputing debit card transactions going back to June of 2006 in the amount of $15,000.00 on Account 55015646, it is my decision to deny your claim.  This decision is made per our Deposit Agreement . . . . If you had reviewed your statements in a reasonable amount of time and reported the fraud to the bank in a reasonable amount of time the fraud could have been prevented.  Due to your lack of due diligence with you [sic] reviewing your statements your claim has been denied."

Although First Gulf does not so argue, the court assumes that First Gulf transmitted Rallis' June 2006 bank statement to him sometime in July 2006, which would have been some five months before he notified First Gulf of the fraudulent transfers.

[5]  Rallis notes that Exhibits B and C to his complaint are copies of documents generated by First Gulf. He complains that First Gulf did not provide him with copies of the documents referenced in the EFT Error Resolution Worksheet as "attached docs."

[6]  In relevant part § 1693g(a) provides that a financial institution need not reimburse a customer for losses the institution establishes would not have occurred but for the customer's failure to report the unauthorized transfer within sixty days, "or in extenuating circumstances such as extended travel   or

which states that nothing in § 1693g imposes liability upon a consumer for an unauthorized electronic fund transfer in excess of his liability under the agreement with his financial institution, provides further limitations on his liability.  For all of these Rallis submits the court should not dismiss the claims but instead should find that he is entitled to offer evidence in their support.  Should the court conclude otherwise, however, Rallis seeks leave to amend his complaint.

As First Gulf contends, in his complaint Rallis does not point to the specific transactions he claims were unauthorized or their dates.  In the court's view this degree of pleading specificity would have been preferable, especially given the ease with which it could have been accomplished and the added focus it would have afforded the allegations. That said, the court nevertheless concludes that the complaint's allegations, taken together with the information contained in the attached exhibits, provide enough information to give First Gulf fair notice of the particular transactions that give rise to Rallis' claims.[7]  Thus in this respect Rallis' allegations pertaining to Counts II and III are sufficient to comply with the minimal pleading requirements of Rule 8(a).

The court turns next to the question of whether Rallis is required to plead as an element of his EFTA claims that he gave First Gulf timely notice of the allegedly fraudulent transfers.  Based on a plain reading of 15 U.S.C. §§ 1693f and 1693g, the court concludes that this question should be answered in the affirmative.  Section 1693f(a) plainly requires a customer to give notice of alleged errors to the financial institution within sixty days after the institution has transmitted documentation of the transfers to the customer.  Section 1693g(a) is equally clear that reimbursement need not be made to a customer for losses the institution establishes would not have occurred absent the customer's failure to  report an unauthorized transfer within sixty days, "or in extenuating circumstances such as extended travel  or hospitalization, within a reasonable time under the circumstances." 15 U.S.C. §1693g(a).  Although Rallis correctly points out that the financial institution bears the burden of proof in an EFTA action involving a consumer's liability for unauthorized

---

hospitalization, within a reasonable time under the circumstances." 15 U.S.C. § 1693g(a).

[7]  The court cannot help but observe that in January 2007 First Gulf found the references in Rallis' EFT Error Resolution Worksheet and attached documents sufficient to render a decision unfavorable to him yet now submits that the complaint and its attachments (which include the EFT Error Resolution Worksheet) are inadequate to identify the very same transactions.

electronic transfers, see 1693g(b), a plaintiff nevertheless must plead his EFTA claims with adequate specificity to give the defendant fair notice of his claims and the grounds upon which they are based. See Swierkiewicz, 534 U.S. at 512. This Rallis has not done. Rallis neither mentions § 1693g in his complaint nor alleges facts regarding his "extensive travels" that the court deems sufficient to alert First Gulf of the potential applicability in this case of the "extenuating exception in § 1693g(a). For these reasons, the court grants First Gulf's motion to dismiss Counts II and III.

Count I: Breach of Contract

In his state law claim Rallis alleges that First Gulf breached the terms of the parties' account agreement by failing to timely report the results of the investigation of his claim and by failing to credit his account for the full amount of the fraudulent transfers. Rallis asserts that as a result of First Gulf's breach, he suffered damages exceeding $70,000 related to his inability to complete the pending real estate transaction as well as a loss of over $8,600 due to First Gulf's refusal to reimburse him fully for the fraudulent transactions.

Defendant moves for dismissal of Count I on the ground Rallis has failed to set forth the basic facts necessary to support this claim, in fact has failed to identify the provision or clause of the agreement he claims the Bank breached. First Gulf also asserts that Rallis has failed to plead that he reported the fraudulent transactions to the Bank within the sixty-day time period established in the account agreement for notification of account errors. Rallis responds that the complaint adequately refers to the relevant sections of the Error Resolution Worksheet as well as the provisions of the account agreement that reflect his claim is subject to First Gulf's "zero liability" policy, which is not subject to any specific time limitations.[8]

The elements of an action for breach of contract under Florida law are: (1) the existence of a contract; (2) a breach of the contract; and (3) damages resulting from the breach. Beck v. Lazard Freres & Co., LLC, 175 F.3d 913 (11th 1999) (citation omitted); Rollins, Inc. v. Butland, 951 So.2d 860, 876 (Fla. 2d DCA 2006) (citation omitted). The

---

[8] The "Unauthorized Transfers" section of the account agreement provides, with respect to point-of-sale transactions, that "[u]nless you have been grossly negligent or have engaged in fraud, you will not be liable for any unauthorized transactions using your lost or stolen Visa card. This additional limit on liability does not apply to ATM transactions, to transactions using your Personal Identification Number which are not processed by Visa, or to commercial cards. . . ." (Doc. 1-2, p. 15).

court finds that Rallis has adequately alleged the existence of the parties' agreement, which also is attached to his complaint.  As to whether Rallis has adequately pleaded a breach of the agreement, the court first notes that Rallis does not identify the specific section of the agreement he asserts was breached.  Such specificity would have been preferable, especially given the fact that First Gulf apparently has directed its argument for dismissal to a different section of the agreement than the "zero liability" section on which Rallis now states he relies.  Even so, the court concludes the complaint's allegations and attached account agreement excerpt should be adequate to inform First Gulf of the section of the agreement that is at issue.[9]  The court is persuaded, however, that taken in their entirety Rallis' allegations of breach of contract are insufficient to state a claim for relief. Rallis alleges, as the "zero liability" clause appears to require in order to qualify for this particular limitation of liability, that none of the unauthorized transactions involved an ATM or his PIN. But Rallis does not allege that his Visa card was either lost or stolen, as the "zero liability" clause also seemingly requires. Moreover, the EFT Error Resolution Worksheet attached to the complaint indicates that the Visa card was in Rallis' possession at the time of the fraudulent transfers, and it is unclear from that document whether Rallis reported the card had either been lost or stolen.  The court therefore concludes that as drafted Rallis' allegations of breach of the "zero liability" section of the account agreement lack "enough facts to state a claim to relief that is plausible on its face." Twombly, 127 S.Ct. at 1964-65.  Accordingly, the court will also grant First Gulf's motion to dismiss Count I.

As a final matter, the court addresses Rallis' request that he be allowed an opportunity amend his complaint if the court grants First Gulf's motion to dismiss.[10]  The Federal Rules of Civil Procedure allow a party to amend its pleadings "once as a matter of course . . . before being served with a responsive pleading . . . ." Fed.R.Civ.P. 15(a)(1)(A).  No answer or other responsive pleading has yet been filed in this case, and

---

[9]  Moreover, First Gulf drafted the customer account agreement and presumably is well-familiar with its contents.

[10]  The court notes that First Gulf does not oppose amendment.  See doc. 6,  N.D.Fla.Loc.R. 7.1(B) certificate.

Rallis has not previously amended.[11]  Rallis therefore has the right to file an amended complaint as a matter of course.  Such amended complaint shall be filed within fourteen (14) days of the date of this order.  As provided in Rule 15(a)(3), First Gulf shall respond within ten (10) days after service of the amended complaint.

Accordingly, it is ORDERED:

1.      First Gulf's motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) (doc. 6) is GRANTED.

2.      Dismissal shall be without prejudice to Rallis' filing an amended complaint within fourteen (14) days of the date of this order.  First Gulf's response is due to be filed within ten (10) days after service of the amended complaint.

**DONE and ORDERED** this 24th day of October, 2008.


_s/ M. Casey Rodgers_

**M. CASEY RODGERS**
**UNITED STATES DISTRICT JUDGE**

---

[11]  For purposes of Rule 15(a), a motion to dismiss is not a responsive pleading. Williams v. Board of Regents of the Univ. Sys. of Georgia, 477 F.3d 1282, 1291 (11th Cir.  2007).